### STICKLEY v. MOBILE INSURANCE COMPANY.

1. INSURANCE AGENTS—PAROL CONTRACT.—The charter of an insurance company not prohibiting a parol contract of insurance, the company is bound by such a contract, where its local agent received the money of the assured on the promise of a policy, and it not being shown that the assured knew of any restriction upon the agent's powers in this regard.

2. PROOF OF LOSS—WAIVER—COMMENCEMENT OF ACTION.—Four days after a fire the assured gave notice of loss to the general agents of the insurer, and was asked by the agents in reply as to date and number of policy, but no further proof of loss was demanded. The assured then made out a proof of loss and forwarded it, and the company thereupon denied all liability. Afterwards, action on the contract was commenced within sixty days of the receipt of this proof of loss, but more than sixty days after the receipt by the general agents of the first notice of loss. The trial judge having charged that the contract required sixty days to elapse after the receipt of loss before action commenced, *held*, that the notice within four days was prompt enough, and that the denial of liability by the company was a waiver of any further proof than was contained in that notice. MR. CHIEF JUSTICE McIVER *dissenting*.

3. CHARGE ON FACTS.—The trial judge properly refused to charge that there was not sufficient evidence to establish certain matters in issue, and that a certain letter was "notice of loss and not proof thereof, which was not sent until June 3," as these matters were facts for the jury.

4. REFUSAL OF NEW TRIAL—APPEAL.—No error of law being shown in the refusal by the trial judge of a new trial after verdict rendered, this court cannot interfere.

5. PETITION FOR REHEARING refused.

Before ALDRICH, J., Beaufort, September, 1890.

This was an action by John Stickley against the Mobile

Insurance Co., commenced Aug. 3, 1889, to recover under a contract of insurance for a loss by fire. So much of the complaint as set forth the contract, loss, and proof of loss, was as follows:

III. That on and before the 14th day of June, 1888, the plaintiff applied to Chas. J. Colcock, jr., the duly authorized agent of the defendant at Port Royal, in the county and State aforesaid, for insurance against loss or damage by fire upon his dwelling house, in the city of Port Royal aforesaid, and his furniture contained in said dwelling house. And the defendants, by their said agent, on said 14th day of June, 1888, agreed to become an insurer to said John Stickley on his said dwelling house and furniture for one year from the said day, for one thousand dollars, of which sum six hundred dollars was to insure his dwelling house, and the remaining four hundred dollars was to insure his furniture in said dwelling house, at a premium of one and one-half ($1\frac{1}{2}\%$) per centum, amounting to $15.00; and that the said defendants would execute and deliver to the said John Stickley a policy of insurance in the usual form of policies issued by them, the said defendants, for the sum of one thousand dollars, for the term of one year from said 14th day of June, 1888.

IV. That the said John Stickley then and there paid to the defendants said premium, to wit: fifteen dollars.

V. That it was then and there agreed between the said John Stickley and the said defendants that the said insurance should be binding on the part of the defendants for the term of one year from the time of the receipt of the said premium, June 14th, 1888, for the sum of $1,000—of which sum $600 was on the dwelling house and $400 on the furniture in said house—all the property of the said John Stickley; and the said defendants then and there, in consideration of the premiums, promised and agreed to and with the said John Stickley to execute and deliver to him, in a reasonable and convenient time, a policy, in the usual form of their policies, insuring the said house for six hundred dollars and the furniture therein for four hundred dollars, against loss and damage by fire, the insurance to commence at the time of the receipt of the said premium and continue for said term of one year.

VI. That the defendants, by a policy of insurance issued in their usual form, do promise and agree to make good unto the said assured, or to the executors, administrators, and assigns, all such immediate loss or damage, not exceeding in amount the sum or sums insured, as should happen by fire to the property insured, within the time for which the insurance was made—the loss or damage to be estimated according to the actual cash value of the property at the time of the loss, and to be paid in sixty days after due notice, and proofs thereof should have been made by the assured and received at their office, and the loss should have been ascertained and proved in accordance with the terms and conditions annexed to the policy. And by one of the conditions usually annexed to such policy, it is provided that all persons insured by the defendants, and sustaining loss or damage by fire, are forthwith to give notice thereof to the company, and as soon after as possible render a particular account of such loss, signed and sworn to by them, stating whether any and what other insurance has been made on the same property, also the actual cash value of the property and their interest therein, and among other things, in what general manner insured house was occupied, when and how fire originated, and should produce a certificate, under the hand and seal of a magistrate or notary public nearest the place of the fire (not concerned in the loss as creditor or otherwise, nor related to the assured), stating that he has examined the circumstances attending the loss, knows the character and circumstances of the assured, and verily believes that the assured has without fraud sustained loss on the property insured, to the amount such magistrate or notary public should certify.

VII. That after the insurance so made, and after the said promise to execute and deliver a policy in conformity thereto, and within the said term of one year, for which the said John Stickley was so insured, to wit: on the 24th day of May, 1889, the said dwelling house was totally destroyed by fire, and the furniture therein was damaged and, in part, destroyed by said fire; and the said John Stickley thereby sustained loss and damage to a large amount, to wit: to the amount of over one thousand dollars on his said dwelling house, and more than

four hundred dollars on his furniture in said house, which was worth more than six hundred dollars.

VIII. That plaintiff did not have any other insurance on said property.

IX. That the said John Stickley fulfilled all the conditions of said agreement and insurance on his part, and more than sixty days before the commencement of this action, to wit: on the 28th day of May, 1889, gave due notice and proof of the loss, as aforesaid, to the defendants, and duly demanded payment of the sum of one thousand dollars.

X. That the defendants refused to pay the same or any part thereof, and no part therof has been paid.

The letter of plaintiff to E. W. Seibels & Co., general agents, dated May 28th, 1889, was as follows:

GENTLEMEN: On the 14th day of June, 1888, I insured my house and furniture, at Port Royal, in your company, through your agent, C. J. Colcock, jr., for $1,000. That on Friday, May 24th, 1889, my house was burned down, and considerable of my furniture destroyed, amounting in value to $1,500. I would, therefore, be obliged, if you will remit me a check for the amount of my insurance of $1,000; or, if you prefer to investigate my loss to satisfy yourself, you can do so, and you will find that my losses greatly exceed the amount of my insurance. An early reply will oblige, yours truly,

JOHN STICKLEY.

The judge charged the jury as follows:

*Gentlemen of the Jury:* This is an action brought by Mr. John Stickley against the Mobile Insurance Company. You will read the complaint over very carefully; that states the cause of action. The material points, or among the material issues raised in this case, are, that, on or before the 14th day of June, 1888, the plaintiff applied to Mr. Colcock, as an agent of the Mobile Insurance Company, to insure his dwelling house and the furniture therein; that Mr. Colcock, the agent of the company, agreed to insure the house, in consideration of the premium of $15 paid, for a period of twelve months from the 14th day of June, 1888, and that he would procure and deliver to the plaintiff a policy of insurance of the Mobile Insurance

Company in the form usually issued by the company; and that it was further agreed that the insurance (that is, the risk of fire,) was insured against from that day, the 14th day of June, 1888. These are among the leading questions, or issues, presented in the complaint. The most of them are denied in the answer. It is a long complaint, and I can't read it all over to you; I don't desire to; you heard it read, and you will consider these issues along with the others.

A policy of insurance is a contract entered into by the party who seeks to have his property insured and the insurance company who agrees, for and in consideration of certain payments, we call a premium, that it will insure his property against loss or damage by fire for the time or period mentioned in the policy of insurance. Now, insurance companies are corporations, and, like corporations, usually are composed of an aggregation of individuals called stockholders, who can't get together; and they, therefore, elect officers, who are called directors, president, and so on, and agents are appointed, and the corporation performs and carries on its business through the instrumentality of these agents. An agent representing his principal has only the authority which the principal sees fit to give him. The agent's right and authority to do any act, and to bind his principal, must be derived from that principal; otherwise the principal would be at the mercy of a man who is not his agent.

A policy of insurance is a contract. Usually it is in writing, but there is no law, of which I am aware, no statute of the legislature, or rule of the common law, which says that a contract of insurance must necessarily be in writing; to the contrary, the courts have held that an oral contract for insurance is good, and I charge you, therefore, that an oral contract of insurance, made out by the evidence to your satisfaction, is a good contract.

It is admitted in the pleadings that the Mobile Insurance Company is an insurance company, and was doing business here in this city at that time. The first question, then, comes up is: was Mr. Colcock an agent of the company? That is admitted in the pleadings. Now, then, one who relies upon

the act of an agent to bind the principal, must first satisfy himself that the agent has the authority to bind the principal, otherwise he acts at his peril, and the reason is too plain : any-body could say they were the agents of the Mobile Insurance Company, and undertake to write policies of insurance, while, as matter of fact, they are not; well, the company would not be bound.  Then, again, if the company made the agent, the party who deals with him, as I have just stated, must satisfy himself that the agent had the authority to make the contract which he seeks to enforce.  If Mr. Colcock, as was admitted here, was the agent so expressed in writing, did he have the authority to make the parol contract of insurance?  Now, I charge you this as matter of law; that, in cases like this, if it is legal and right for agents to make a contract, the law says, that when he makes that contract in a legal manner, and he has the authority to make that contract, it is valid ; and I have charged you that an oral contract to insure is a good contract.

If you conclude that the contract was made, as matter of fact, and that the property was destroyed, we come, then, to the other question, or some of the other issues that arise in the case.  The plaintiff having contracted, as he alleges, with Mr. Colcock for a policy in the usual form adopted and issued by the company, after the property was destroyed, the issue was raised : was proof of loss made, or notice and proof of loss made, according to the contract?  I am going to relieve you of a good deal of trouble on that question.  A written instrument is for the construction of the court; according to the contract, then, as alleged by the plaintiff, it was incumbent upon the plaintiff to give due notice and proof of his loss.  The court construed that the letter of the latter part of May, 1889, was notice, in the absence of what was usually contained in these policies of insurance issued by the defendant company as their particular form.  There was some proof there of the loss.  The defendant insurance company had a right to stand upon their contract, and require this proof of loss to be made, if they saw fit, or they might waive that proof.  When they got the letter of the latter part of May (the notice), the answer communicated, after certain other facts, that they referred the letter to the

Mobile company, and the Mobile company wrote back, it seems, and the agents then wrote saying they denied all liability. Well, that denial was a waiver of all right to call for any further proof of loss, and the plaintiff then and there, so far as the proof of loss was concerned, was relieved of the necessity of giving any further notice of loss, or proof of loss.

One of the next issues which arises is, that, if the notice and proof of loss has been established, the company then has sixty days in which to pay, as counsel for the company aptly quoted, a promissory note: "Sixty days after date you promise to pay," and so on; you can not bring action before the sixty days expire, you have not got a right to sue on it; that is, before sixty days expire after notice of the loss. I have charged you in reference to that, that the plaintiff's letter of the latter part of May, 1889, did contain a notice of loss, and did contain some evidence of the proof of loss. In answer to that notice, as I have already stated, the agent of the insurance company, in Columbia, wrote word back, demanding specific proof of information as to certain facts and things that they wished to know about it, and then the letter was sent. I charge you, then, that under that statement of the case, the letter of the latter part of May was a notice of the loss, and that notice and the proof having been waived later on, in the letter of the 6th, I believe, the moment they waived the proof, any additional proof of loss, or the right to demand it or any liabilities, then the right began to run against the company to demand the payment, and, if the suit was brought after the sixty days, then, in that regard, the plaintiff had the right to bring the suit; but, if he didn't allow the sixty days, then he didn't have any more right to sue on that policy of insurance than you would have to sue on a promissory note of sixty days, after three or four days, or a week, before it was due.

Defendant made certain requests. First: "In order for plaintiff to recover on a parol contract of insurance, he must prove affirmatively all of the terms of such contract, and must also prove affirmatively that the agent had such authority." I have already charged you that substantially; that is good law, and I grant the request. A contract means the drawing

together of the minds of people; it means the making of a bargain, and you, as jurors, are to pass upon the contract, must be put in possession of all of the contract—every part of the contract; and the burden is upon the plaintiff to establish by the preponderance of evidence, to your satisfaction, that he made the contract as alleged in the complaint; and I have already charged you that when he dealt with the agent of the company, he assumed the risk that the agent had the authority to make the contract which he set up.

Second: "The declarations of an agent are not evidence of his authority." Well, that's very good law, and this plaintiff dealt with Colcock at his peril, as to whether the alleged parol agreement was within the scope of his authority, and if he had no such authority, the alleged agreement was void. That, gentlemen, is correct. (To Mr. Seibels.) "I notice you have struck out those words there; I noticed, and I charge that request as presented. The objectionable part is struck out."

Third: "The testimony is insufficient to show such authority." That I refuse to charge, because I have got no business to tell you what is sufficient and what is not sufficient. I cannot pass upon the facts.

Fourth: "Even if the testimony is sufficient to establish such authority, the testimony is insufficient to prove such parol agreement." That I refuse; I cannot charge you what facts evidence proves and what it does not; you are to draw your conclusions from the testimony, and not the court.

Fifth: "The agreement was for a policy of the company in the usual form, and the rights of the parties must be determined by the conditions of such a policy, though never issued." That, I charge you, is good law, because the plaintiff in his complaint alleges that the contract was for a policy issued in the usual form.

Sixth: "The letter of plaintiff, in evidence, dated the 28th of May, was notice of loss and not proof thereof, which was not sent by him until the 3d of June." The sixth paragraph I am going to refuse. The letter I have already passed upon, and the second letter, containing the affidavit and so on, was

additional proof and notice, and didn't deprive the letter of the 28th of May of whatever force and effect it had.

Seventh : "If such proof was not received until the sixth of June by any agent of the company, this suit was prematurely brought, for the reason that sixty days thereafter had not elapsed."   I charge you that, and I charge you again, that it had sixty days after the loss before they could sue, in which they might pay or not.

I don't know as there is anything else which I can say in regard to this case.   Mr. Talbird : "Did I understand your honor to say that the sixty days began to run after the company wrote to them, denying all liability?"   The court : I say that is one of the questions I leave for the jury to settle upon.   I charge them that the sixty days must run ; that is one of the issues in the case, and if the court pass upon that, he might as well pass upon all.   The rule of evidence is, that the plaintiff must prove his case by a preponderance of the evidence.   It is different from a criminal case, as I have charged you so frequently that the State must prove its case beyond a reasonable doubt, but in a civil case (and this is a civil case) the plaintiff is only required to prove his case by a preponderance of evidence ; and if he fails to prove his case by a preponderance of evidence, why, then, your verdict must be for the defendant.   If proved to your satisfaction, it should be for the plaintiff.

The jury found a verdict for the plaintiff for nine hundred and eight and 25-100 dollars.   Defendant's counsel made a motion on the minutes of the court to set aside the verdict and for a new trial.   After argument, the motion was refused by the following order :

The defendant's counsel moved on the minutes of the court to set aside the verdict of the jury as against the preponderance of the evidence and for a new trial, upon several grounds.   The question that gives most trouble to decide is, whether sixty days elapsed after the service of proofs of loss before the bringing of this action.   I think the company's denial of liability was a waiver of further proof, and a waiver of any defects in any proof served.   This being so, the letter of 28th of May was proof.   Now, this letter was received by Seibels & Son, general

agents of the defendants, on the 30th May. I regard that as a receipt by the company, and that the sixty days then began to run. *It is ordered,* That the motion be refused.

Defendant appealed.

*Mr. John T. Seibels,* for appellant.

*Mr. Thomas Talbird,* contra.

November 25, 1892. The opinion of the court was delivered by

MR. JUSTICE POPE. This was an action tried before his honor, Judge Aldrich, and a jury, at the September, 1890, term of the Court of Common Pleas for Beaufort County, wherein a verdict was rendered for the plaintiff, and after judgment was entered thereon an appeal was taken to this court. It may be remarked, that this is an action to recover the amount of an insurance of the dwelling house and furniture, alleged to have been effected for the plaintiff by one, Colcock, as the agent of the defendant, the Mobile Insurance Company, beginning on the 14th day of June, 1888, and ending one year thereafter, for a cash premium paid by the plaintiff to said agent upon the agent's assurance that the insurance began on that day, and that the company would forward the policy in a few days by mail. The premium paid was $15. The amount of insurance was $1,000, $600 on house and $400 on furniture. The verdict was for $908.25. No policy of insurance was ever received.

The property was destroyed on 24th May, 1889. Notice of loss was forwarded by letter from plaintiff to defendant's general agents, at Columbia, S. C., on 28th May, 1889. On 30th May, 1889, such agents replied, merely denying knowledge of such contract, and asking for dates, amount paid, to whom, whether receipt was given for premium, and asking copy of same—whether policy was delivered, its number, with written portion of same, including date of same and expiration. It was proved that Colcock was appointed agent of the plaintiff, and authorized to take risks. This letter was replied to promptly by plaintiff, and an inventory of his loss included, which were received by the general agents at Columbia on June 5th, 1889. All such papers being forwarded to the home

office, such company denied "any liability for the loss, as they never insured the risk referred to."

The defendant requested the court to charge the jury:

Third: "The testimony is insufficient to show such an authority." This request the judge refused to charge, upon the ground that he could not charge upon the facts. Fourth: "Even if the testimony is sufficient to establish such authority, the proof is insufficient to prove such parol agreement." This the judge refused, as it would be a charge upon the facts. Sixth: "The letter of plaintiff, in evidence, dated the 28th of May, was notice of loss, and not proof thereof, which was not sent by him until the third of June." This request was refused in these words: "The sixth request I am going to refuse. The letter I have already passed upon, and the second letter, containing the affidavit and so on, was additional proof and notice, and didn't deprive the letter of 28th May of whatever force and effect it had."

The defendant submits the following grounds of appeal:

1. It is respectfully submitted that his honor, the presiding judge, erred in overruling the defendant's objection to the plaintiff's testimony, tending to show a parol contract of insurance.

2. It is respectfully submitted that his honor, the presiding judge, erred in refusing defendant's motion for a non-suit, based on the grounds that the plaintiff had failed to show affirmatively either that the agent had authority to make the alleged parol contract of insurance or to issue a policy, or (2) that such a contract, complete in all its terms, was made.

3. It is respectfully submitted that his honor, the presiding judge, erred in refusing defendant's motion for a non-suit, based on the ground that the plaintiffs had failed to prove that the proofs of loss were received by the company, as required by the policy, sixty days before the suit was instituted; the evidence being that said proof was sent by him in his letter of 3d June, received by the former general agents of said company on the 5th, and acknowledged in their letter of 6th June, and sent by them to the company on the 6th June; and erred in holding that, by the company's refusal to pay in June, the letter of 28th May became sufficient proof of loss.

4. It is respectfully submitted that his honor, the presiding judge, erred in charging the jury that the letter of the latter part of May, 1889, was a proof of loss.

5. It is respectfully submitted that his honor, the presiding judge, erred in charging the jury that plaintiff could not sue "before sixty days expired after notice of loss," whereas the sixty days run from the due receipt of the proof, and not from the notice of loss.

6. It is respectfully submitted that if his honor, the presiding judge, correctly charged the jury that when the company waived the proof (by denying the liability), the sixty days then began to run, and the plaintiff must allow sixty days; he should have charged, then, that the plaintiff could not recover.

7. It is respectfully submitted that his honor, the presiding judge, erred in refusing defendant's third request to charge.

8. It is respectfully submitted that his honor, the presiding judge, erred in refusing defendant's fourth request to charge.

9. It is respectfully submitted that his honor, the presiding judge, erred in refusing defendant's sixth request to charge, and in charging the jury that the second letter, containing the affidavit, was merely additional proof and notice.

10. It is respectfully submitted that his honor, the presiding judge, erred in adding to the seventh request, "and I charge you again, that it had sixty days after the loss before they could sue, in which they might pay or not."

11. It is respectfully submitted that his honor, the presiding judge, erred when, in answer to plaintiff's attorney's question, "Did I understand your honor to say that the sixty days began to run after the company wrote them, denying all liability?" he said, "I say that is one of the questions I leave to the jury to settle upon; I charge them that the sixty days must run— that is one of the issues in the case."

12. It is respectfully submitted that his honor, the presiding judge, erred in not clearly charging the jury when the sixty days began to run, the charges referring thereto being, it is deferentially submitted, confusing and irreconcilable.

13. It is respectfully submitted that his honor, the presiding judge, erred in refusing defendant's motion to set aside the

verdict of the jury and for a new trial, and in making the order of the 18th September, 1889, and in every conclusion of law therein stated, especially that the receipt of the letter of 28th May, 1889, by the former general agents, was a receipt by the company at its home office, as required by the condition of the policy.

We will first consider the first and second grounds of appeal, as they pertain to the same question. We will be obliged to hold that an insurance company can make a contract of insurance by parol for which they will be bound. It is too late in the day, in ·view of the manifold forms by which obligations of insurance on property are firmly made by parol, to question the power of such companies to do so. That it may prove unwise, is no argument against such a policy. These corporations are clothed by law with the right to effect insurance upon property, and unless something in their organic constitution, to wit: the charters that give them life, restrict such an exercise of contracting power, or some law of the land to the same effect (and none of these things have been brought to our attention in this case), we will not deny such power. If, then, it was in the power of this company to effect insurance of property by parol contract, the presiding judge did not err in admitting testimony in relation thereto.

Nor did he err in refusing a non-suit because it was not shown affirmatively that the agent had such power. If the company had the power, its agents could do so. It acts alone through agencies. Of course, if there had been brought home to the plaintiff that the company denied its agent such power, then he would have acted to the contrary at his peril. But there was no such testimony here. The judge did not err in refusing a non-suit because a contract in all its parts was not proved. There was such a contract as bound the company, if the testimony was to be believed. We feel it incumbent upon us to make this proposition clear. We do not, as we before remarked, regard this policy of insurance companies in making contracts of insurance by parol as wise, nor do we mean to encourage such a practice. We express no opinion on that subject. What we mean to declare is, that an insurance company that has taken

the money of its customer upon the promise of a policy that is never delivered, cannot repudiate such an obligation by saying that the agent it appointed in writing, as in this case, with full power to represent such company in effecting policies in its name, did not have authority to perform such acts of insurance within the scope of his authority.   We sympathise very heartily with the expression of Mr. Justice Miller of the United States Supreme Court, in the case of *Insurance Company* v. *Wilkinson*, 13 Wall., 235, when he said: "The powers of the agent are *prima facie* coextensive with the business entrusted to his care, and will not be narrowed by limitations not communicated to the persons with whom he deals.   An insurance company, establishing a local agency, must be held responsible to the parties with whom they transact business for the acts and declarations of the agent within the scope of his employment, as if they proceeded from the principal."   These grounds of appeal are dismissed.

We will next consider several grounds of appeal relating to the proof of loss required.   The plaintiff voluntarily in his complaint stated that the usual policy issued by this company, and by which he conceived that he was to be governed, required "the loss or damage to be estimated according to the actual cash value of the property at the time of the loss, and to be paid in sixty days after due notice, and proofs thereof should have been made by the assured and received at their office," &c., and also to give notice promptly of loss by fire, etc.   Now, unquestionably, the careful compliance with the mode of proof, including its attestation, could have been insisted upon by the insurance company.   Its agent had a perfect right, on the 30th of May, 1889, to have demanded this absolute compliance with all the conditions that the plaintiff admits were a part of his contract, and we apprehend the company, at its home office, when the letter of its general agents, that was written on the 30th May, 1889, to the plaintiff, was received at such home office, could have disavowed such action of its general agents, and required strict compliance with these conditions.   But neither did so.   The general agents never asked for any careful proofs of loss; their inquiries related

solely to facts in the knowledge of plaintiff as to the contract of
insurance. And the insurance company, from its home office,
contented itself with a denial of all liability under the contract
whatsoever. Its reply was virtually a declaration of war.
Now, under these circumstances, was there not a waiver by the
defendant company of any other proofs than those contained in
the letter of 28th May, received by them on the 30th May? It
makes no difference that the home office only received a sight
of that letter between the 6th and 14th June, for their general
agents in this State saw the letter on the 30th May, and in the
eye of the law the defendant then saw it.

Remembering that, by the terms of the policy, the assured
was to give notice promptly, we think the letter of the 28th
May, telling of the fire that occurred on the 24th, was prompt
enough. And furthermore, we have concluded that where
some proof of loss is furnished, and the defendant company
does not complain at the time of the receipt of such defective
proof, but denies that there is any contract of insurance what-
soever between them, full proof is waived. *Tayloe* v. *Insurance
Co.*, 9 How., 406. In the case cited, proofs of loss were made
long after the fire, but the company had denied all liability;
the court held, "that the denial of having entered into the
agreement, and refusal to issue the policy, also set forth, are
sufficient ground upon which to infer a waiver of the production
of the preliminary proofs as a condition of liability." *Dial* v.
*Life Insurance Association*, 29 S. C., 560. The principle under-
lying the whole matter is a question of fact as to a waiver by
the insurance company of the condition that proofs be rendered
by the assured promptly, and consisting of certain alleged forms
of proof. It will be admitted that the insurance company could
directly agree to waive these forms. And it is equally as cer-
tain that the same result would follow a line of conduct by the
insurance company, which repudiated any connection with the
assured in relation to a contract of insurance. Inasmuch,
therefore, as the Circuit Judge has held that the contract here
(and from this conclusion there is no appeal) required an inter-
val of sixty days to elapse between the proof tendered 30th
May, and as the action was not brought until the 5th August,

1889, it follows that the Circuit Judge did not err in his charge to the jury in this respect. This declaration by us disposes of the 3d, 4th, 5th, 6th, 10th, and 12th grounds of appeal.

We will now consider the 7th, 8th, and 9th grounds of appeal. By a reference to the text of these bequests, it will be seen that the appellant sought a charge of the Circuit Judge upon the facts. This he refused to do, and in his refusal he acted in obedience to the law of this commonwealth forbidding judges from charging juries upon questions of fact. These grounds of appeal are dismissed.

Lastly, we will notice the alleged error of the Circuit Judge in refusing the motion of appellant to set aside the verdict of the jury and to grant a new trial. After a careful consideration of the matters here referred to, we perceive no error. It was in the discretion of the Circuit Judge to grant a new trial. Where that discretion is based upon matters of fact, we are powerless. It is only when errors of law occur, that this court can intervene to correct the order refusing the new trial. The appellant has failed to point out, in his ground of appeal, such errors of law. It must follow, then, that we cannot do so. This ground of appeal is dismissed.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McGOWAN concurred.

MR. CHIEF JUSTICE McIVER *dissenting.* It seems to me that the Circuit Judge erred in his instructions to the jury as to the effect of the letter of 28th May, 1889. I do not think such letter amounted to anything more than a mere *notice* of the loss, and cannot be regarded as any *proof of loss* whatever. Now, as the contract, as set out by the plaintiff in his complaint, expressly provides that the amount due on the policy should be paid "in sixty days after due notice and proofs" of the loss "should have been made by the assured, and received" at the office of the company, the plaintiff, clearly, would have no right of action until the expiration of sixty days from the receipt of both notice *and* proofs of loss. While it may be true that a denial of liability would

dispense with the necessity for furnishing proofs of loss, yet the "Case" shows that such denial of liability was not made sixty days before the action was commenced. So that, if the denial of liability is to be regarded as a substitute for the proofs of loss, the right of action would not accrue until after the expiration of sixty days from such denial; and, therefore, under this view, the action was prematurely commenced.

Now, whether the defendant would be entitled to sixty days from the denial of liability before any action could be commenced against it, is a question which does not seem to have been considered or passed upon by the Circuit Judge, and hence, such question is not properly before this court. Indeed, the Circuit Judge seems to have conceded, at least by implication, that the defendant was entitled to sixty days from the denial of liability; but as, in his opinion, the letter of the 28th of May did amount to some proof of loss, and as that letter was written and received by the general agents of the company more than sixty days before the commencement of the action, the verdict of the jury was, doubtless, rested upon that view; in which, I think, the judge erred. That this was the view of the Circuit Judge is conclusively shown by the following language, contained in his order refusing the motion for a new trial: "The question that gives most trouble to decide is, (as) whether sixty days elapsed after the service of proofs of loss before the bringing of this action. I think the company's denial of liability was a waiver of further proof, and a waiver of any defects in any proofs served. This being so, the letter of 28th May was proof. Now, this letter was received by Seibels & Son, general agents of the defendants, on the 30th May. I regard that as a receipt by the company, and that the sixty days then began to run." I cannot, therefore, concur in the conclusion reached by the majority of the court.

For a proper understanding of the case, I would suggest to the reporter to embrace in his report of the case so much of the complaint as sets forth the terms of the contract, the judge's charge, and a copy of the letter of 28th May, 1889.

Judgment affirmed.

In this case there was a petition for rehearing, upon numerous

grounds, upon which petition the following order PER CURIAM
was endorsed, December 20, 1892 : All the points raised
by this petition were fully considered and determined
by a majority of this court; and, as we do not find that
anything was overlooked which was deemed material, there is
no ground for a rehearing.   It is, therefore, ordered, that the
petition be dismissed, and that the stay of the remittitur
heretofore granted be revoked.