## 9433

### BURDEN v. WOODSIDE COTTON MILLS.

#### (89 S. E. 474.)

1. MASTER AND SERVANT—WAGES—PAYMENT—STATUTES—"DISCHARGE."— Under Civ. Code 1912, sec. 3812, providing that, when a corporation discharges a laborer, the wages theretofore earned shall become immediately due, and on default the laborer shall recover, in addition, a certain penalty, whether a corporation employee was discharged when his overseer told him to do certain work or quit, and he did quit, depended on whether it was his duty to do the work ordered, since, if it was his duty to do as ordered, his quitting was not a "discharge," but voluntary; otherwise it was a "discharge."

2. MASTER AND SERVANT — ACTION FOR WAGE PAYMENT PENALTY — INSTRUCTION—APPLICABILITY.—In action against a corporation for penalty for failure to pay wages when discharged, given by Civ. Code 1912, sec. 3812, the defense being that plaintiff was merely given option to do certain work claimed to be part of his duties or quit, his contract duties being those customary at other mills, an instruction requiring the jury, in determining whether the ordered work came within plaintiff's contract duties, to consider only the custom at defendant's mill was erroneous; defendant having introduced testimony to support its contention.

3. CUSTOMS AND USAGES—AS PART OF CONTRACT.—The known usages of a trade, business, or calling are presumed to enter into and form a part of contracts made with respect thereto, unless they are excluded or modified by agreement.

4. MASTER AND SERVANT—ASSENT—MISTAKE.—If one party to a hiring contract contracted with reference to custom at other plants and the other with reference to custom at the plant where hired, there was no meeting of their minds and no contract.

5. Master and Servant—Failure to Pay Wages on Discharge.—In such case, in an action to recover penalty for failure to pay wages upon discharge, if plaintiff quit upon being given the option to do certain work assumed by the overseer to be part of his duties, his quitting would be simply a refusal to make a contract and not a discharge.

6. Appeal and Error—Harmless Error—Party Aggrieved.—Ordinarily only the party aggrieved or injured by errors or irregularities in the trial can complain of them.

7. Appeal and Error—Verdict—Insufficiency—Objection by Defendant.—Where jury has no discretion in fixing the amount of recovery, the amount being fixed by statute, a verdict for one-half the statutory amount is error of which defendant may complain.

Before DeVore, J., Greenville, February, 1915. Reversed.

Action by Watson Burden against the Woodside Cotton Mills. From a judgment for plaintiff, defendant appeals.

*Mr. B. A. Morgan,* for appellant, cites: *As to penalties:* 13 A. & E. Enc. of L. (2d ed.) 53 and 54.

*Messrs. Martin & Henry,* for respondent.

*Mr. Henry* cites: *As to proof of custom:* 8 Am. St. Rep. 771; 44 S. C. 227; 46 N. W. 306; 46 S. C. 220; 3 Enc. Ev. 952, 955; 27 A. & E. Enc. of L. 748; 9 Pick. (Mass.) 198; 58 Am. Dec. 718; 53 S. C. 295; 10 Am. St. Rep. 669. *Necessity for request to charge:* 90 S. C. 323. *Construction of statute:* 96 S. C. 3. *Remedial statute:* 36 Cyc. 1173, 1182. *Reasonable construction:* 14 L. R. A. 502; 45 L. R. A. 504; 22 L. R. A. (N. S.) 1221; 6 L. R. A. (N. S.) 1154; 91 S. C. 379.

July 3, 1916.

The opinion of the Court was delivered by Mr. Justice Hydrick.

Plaintiff was employed by defendant from January 1 until March 23, 1914, as a doffer. The contract of employ-

ment was general; the duties of a doffer not being specified. There was testimony that in other cotton mills the doffers cleaned the spinning frames. Plaintiff admitted that he knew this, and that, as doffer in another mill, he had performed that duty. But it also appeared that in defendant's mill from the time it commenced operations, about the middle of 1913, until plaintiff's alleged discharge, each doffer attended a number of frames assigned to him, and these were cleaned by another hand. Defendant's overseer of spinning said that it was the duty of doffers to clean the frames, and that all doffers knew it, but that he had not required them to do it until the 23d of March, when he ordered all the doffers to work together, instead of each attending special frames, and to clean the frames. They did the work as ordered during the forenoon of that day, but did not go back to work after the noon hour. Finding them idle in the mill, the overseer ordered them to go to work. They refused, giving as their reason that he had put extra work upon them. He then told them either to go to work or quit. They quit, and plaintiff demanded of the paymaster the wages that he had earned. He was told that he would not be paid until Saturday, the regular weekly pay day.

Section 3812 of the Civil Code of 1912 provides that, when a corporation discharges a laborer, the wages theretofore earned shall become immediately due, and, on failure of the corporation to pay them after demand, the laborer shall recover, in addition thereto, a penalty of $5 per day until they are paid.

Plaintiff sued, under this statute and the facts above stated, to recover $335, the penalty for 67 days. Defendant denied his right to recover on the ground that he had not been discharged. If he was discharged, he was entitled to recover the amount sued for; if not, he was not entitled to recover anything. The jury returned a verdict for plaintiff for $167.50—one-half the amount sued for. The Court

refused defendant's motion to set aside the verdict, and from the judgment entered thereon, defendant appealed.

The vital question in the case was not, as seems to have been supposed at the trial, whether defendant had the right, under the contract of employment, to discharge plaintiff. It may be conceded that defendant had a perfect legal right to discharge him; nevertheless, if he did, in fact, discharge him, the statute imposed upon defendant the duty to pay him, on demand, the wages theretofore earned by him. Therefore the right to discharge becomes important only in so far as it may aid in deciding whether there was a discharge.

It will be noted that the statement of the overseer to plaintiff upon which the fact of discharge is predicated was not an absolute or peremptory discharge. It was conditional—either do the work as ordered or quit. Plaintiff was given the right to exercise his own volution. If it was his duty to do the work as ordered, he must be held to have voluntarily abandoned the service. If my servant agrees to go to work at a specified time, and I say to him, you must go to work at the time agreed upon or quit, and he quits, his quitting is voluntary, and I cannot be said to have discharged him. On the contrary, if a servant is ordered to do something which by the terms of his contract he is not required to do, and the doing of it is made a condition of his being allowed to remain in the service, his refusal to do it, though voluntary in a sense, would nevertheless be a discharge, because he could remain in the service only upon a condition which the master had no right to impose. Therefore it is important to ascertain whether there was a contract, and what its terms were, to determine whether the defendant had the right to give the order in question and make obedience to it a condition of remaining in the service.

The first exception complains of the following instruction:

"What another cotton mill requires of its employees must not be considered here, as the issue in this case is:

2, 3 What was the contract of the parties? What were the duties of plaintiff, under the terms of his employment, whether expressed in words or implied by the custom of defendant, and not the custom of other cotton mills."

It is well settled that the known usages of a trade, business or calling are presumed to enter into and form a part of contracts made with respect thereto, unless they are excluded or modified by agreement. *Thomas* v. *O'Hara*, 8 S. C. L. (1 Mill, Const.) 303; *Cummins* v. *Keckley*, 16 S. C. L. (Harp.) 268; *Conner* v. *Robinson*, 20 S. C. L. (2 Hill) 354; *Smets* v. *Kennedy*, 22 S. C. L. (Riley) 218; 9 Cyc. 252; 12 Cyc. 1044.

Plaintiff contended that he was employed with reference to the custom at defendant's mill. Defendant contended that he was employed with reference to the custom prevailing in other mills, and that it had no different custom, but that its manner of conducting the business was only temporary during the time its operations were being organized. It was therefore a question of fact for the jury whether defendant's failure to impose on the doffers the duty of cleaning the frames during the period mentioned was sufficient, under all the circumstances, to establish a custom in defendant's mill that the doffers were not to clean the frames; also whether the contract was made with reference to that custom, if one was established, or with reference to the custom in other mills, if any was proved. The instruction given was therefore erroneous, because it excluded from consideration of the jury defendant's contention, which was reasonably inferable from the testimony.

If the parties contracted with reference to the practice in defendant's mill, defendant had no right to make the order and obedience to it a condition of plaintiff's being allowed to remain in the service, and it must be held that

4, 5 plaintiff was discharged. But, if the parties contracted with reference to the custom in other mills, it

was plaintiff's duty to obey the order, and his refusal to do what he contracted to do and the order required him to do as a condition of remaining in the service was a voluntary abandonment of the service, and not a discharge.  If plaintiff contracted with reference to one alleged custom and defendant with reference to another, there was no meeting of their minds and no contract.  In that event defendant had the right to make the order and make compliance with it a condition of remaining in the service, as the terms of a contract then to be made, and plaintiff's refusal to work accordingly would be merely a refusal to make such a contract, and, under those circumstances, his quitting would be a voluntary abandonment of the service, and not a discharge.

The next question is whether the Court erred in refusing defendant's motion to set aside the verdict on the ground that the jury arbitrarily cut in half the amount which plaintiff was entitled to recover, if at all.  Ordinarily only the party aggrieved or injured by errors or irregularities in the trial can complain of them.  2 Cyc. 631.  There are many reasons why this should be so.  In 29 Cyc. 848, it is said:

"A new trial for inadequacy of damages will not be granted on the application of the party against whom they were rendered."

It is easy to understand why that, as a general rule, should prevail.  But in this case the jury had no discretion as to the amount to be awarded.  That was fixed by the statute, and, under the undisputed evidence, the verdict should have been for the amount sued for, or it should have been for the defendant.  Clearly, therefore, the verdict was contrary to the law and the evidence.  The fact that the jury failed to render a true verdict according to the law and the evidence, and arbitrarily cut in half the amount that plaintiff was entitled to recover, if he was discharged, justifies the inference that they may have taken an unwarranted license in dealing with the facts.  Such verdict ought not to be

allowed to stand. Jurors have great powers within proper limits, but they have no dispensing power. They have no right to make or amend the law. They are to find the facts, and apply to them the law, as declared to them by the Court, and express the result in their verdict. They have no more right to invade the province of the Court and undertake to decide what the law is or ought to be than the Court has to invade their province, and participate in the decision of the questions of fact. The value of jury trials in the administration of justice depends upon each being kept in its proper sphere.

Judgment reversed.