16181

CAROLINA AVIATION, INC., v. GLENS FALLS INS. CO.
(51 S. E. (2d) 757)

*Messrs. Sam R. Watt and Rufus M. Ward*, of Spartanburg, *for Appellant,*

*Messrs. Warren N. Martin and Mann & Arnold,* of Greenville, *for Respondent,*

*Messrs. Sam R. Watt and Rufus M. Ward,* of Spartanburg, *for Appellant,* in reply,

February 8, 1949.

Stukes, Justice.

This is an action upon an alleged oral contract of insurance. At the conclusion of the evidence the trial judge directed a verdict for the defendants. Upon motion for new trial he reversed his former holding with respect to appellant and granted a new trial as to it. This appeal followed.

In evidence was a policy issued to respondent by appellant dated June 4, 1945, which insured against theft, robbery and pilferage a Waco airplane in the face amount of $2,000.00,

which, by policy endorsement dated July 12, 1945, was pro-rated in stated amounts against various specified parts of the plane. The annual premium was $70.00. The insured plane was flown from the Greenville home of respondent to Atlanta on July 27, 1945, and traded for a Stinson Voyager 10 plane and a difference of $1,900.00 in cash was paid by respondent. An official of respondent called over the telephone an employee of Alester G. Furman Company, the local agents with whom respondent dealt and who had counter-signed and delivered the existing policy, told him of the trade and asked him to insure the newly acquired plane. This employee of the Furman Company was Mr. Brown. He returned to his office and wrote a letter to the general agency in Columbia, Seibels, Bruce & Company, attention Mr. Michaelsen, after reference to the existing Glens Falls policy, as follows: "The Carolina Aviation, Inc., has just traded the Waco UPF-7 for a Stinson Voyager 10, I will get the proper numbers and send them to you tomorrow. Please keep this bound. Yours very truly, Alester G. Furman Co., By (Signed) Henry A. Brown".

This letter was received in the general agency in Columbia on July 28, 1945, but nothing was done then towards the issuance of a new policy or endorsement of the old one to formally effect the requested coverage. On an attempted commercial flight to Washington the Stinson plane crashed late that day near Farmville, Va., and the pilot, respondent's employee, was injured to an extent which required hospitalization. He was able, however, to telephone that night to respondent in Greenville and report the accident. About the same time he engaged the local airport to bring in the wrecked plane and protect it. This was not done promptly and afterward it was discovered that instruments and parts of the plane had been removed. It is for the alleged cost of replacement and installation of them that this action was brought for the sum of $2,234.85 and interest.

The answer contains a limited general denial, admits respondent's (quoting) "application to cancel the insurance coverage on the Waco airplane and that a policy covering the Stinson airplane be issued" but alleges that it was ineffective without the agreement of the insurer and the application was not received until July 30th, two days after the new plane was wrecked, and appellant never insured it, or agreed to insure it; further defense was alleged from the claimed negligence of respondent in its failure to properly protect the wrecked plane.

The respondent undertook to prove its case principally by the testimony of Messrs. Brown and Michaelsen, whom it called as witnesses. Mr. Brown testified that he was an old employee of the Furman Company and worked in its insurance business, particularly in its representation as agent of the appellant insurance company which writes aviation insurance, for which oral applications were taken and resulting policies issued. The witness was himself without "binding authority" which he procured from the Columbia agency, dealing there with Mr. Michaelsen. He recalled that on July 27, 1945, an official of respondent called him at night about insurance on the Stinson plane and he returned to his office and wrote the letter to his company, he said, which was Associated Aviation Underwriters and Glens Falls Insurance Company, addressed it to Mr. Michaelsen and mailed it to Columbia that night. The next he heard was of the crash, but he did not recall if he heard on Saturday night (the 28th) or Sunday or Monday following. The information came to him from respondent, whereupon the witness notified the company and Mr. Michaelsen. The company thereupon referred the matter to a local adjuster, but the report did not refer to a theft but merely to the crash. There was a standard premium rate applicable to airplane policies and the witness would render statements from time to time to respondent and at the end of the month. The policies were written for terms of one year. The amount of insurance applied for on the new plane was $4,000.00. "Hull coverage"

was the type of airplane insurance procured from appellant and Mr. Michaelsen; this includes theft. The Furman Company was the "authorized representative" of appellant and the witness, Brown, was a licensed agent. The existing policy, covering the Waco, was effective June 4, 1945, but the endorsement was dated July 12th, effective retroactively as of the date of the policy, June 4th. Separate liability insurance was also procured on the plane through the witness from Aero Underwriters, Atlanta.

Mr. Michaelsen testified that in 1945 he was an employee of Seibels, Bruce & Company, General Insurance Agents, representing appellant, and he handled aviation matters for them, with "binding authority" from appellant, which means that he was authorized to effect insurance orally or in writing which obligated the insurance company. The witness received the letter in evidence on July 28th and, quoting him: "Accepted the plane (the Stinson) under a binder; I accepted insurance". This he said meant that he bound it in an amount "to be determined" and that the amount of $4,-000.00 was later determined; which was within his authority. The testimony at this point is quoted: "A. The binder on the Stinson was accepted by me myself, then the amount was not settled before this dispute arose. To put it in a different light, never did exactly settle the amount because of this difference we are now in. The Court: Did you ever settle the amount? A. Henry Brown and I did". After the loss a formal written application for insurance upon the Stinson plane was submitted to the general agency. After the foregoing testimony the witness said that although Mr. Brown's letter was received by Seibels, Bruce & Company on July 28th (Saturday) it did not receive his attention until July 30th (which was after the crash of the plane but inferably before the loss by theft) and that it was the practice to date binders back to the time of the receipt of the application, in order to protect the insured, which in this instance was July 28th. A component parts policy is one which by an endorsement allocates the insurance in certain limits upon specified

parts of the plane and is ordinarily used when the total insurance is less than half of the list price of the plane or when it is a war surplus plane. This allocation to parts is not used in the case of a new plane which the Stinson was. First knowledge of the crash of the plane came to the witness by letter dated August 1, which advised that it was a total loss, and at that time the necessary information to prepare a policy had not been received and no premium had been paid. Associated Aviation Underwriters, which had been joined as a defendant, is not a corporation, has no property, but is a service department for the aviation business of the member insurance companies. Seibels, Bruce & Company does not deal with property owners who apply for insurance, but only with local agents such as the Furman Company and its employee, Mr. Brown. A policy was not issued in this instance and was not intended; instead, the witness intended to endorse the existing policy with a "rider" whereby the Stinson plane would be substituted for the Waco, but this was not done because Associated Aviation Underwriters never recognized the change although it was requested by the witness and, of course, no endorsement of the policy was delivered to respondent. The witness concluded his testimony with a reiteration that he could "bind".

Further testimony in behalf of respondent was given by Frank Mims who was its airport manager and commercial pilot and was flying the Stinson when it crashed in Virginia. As respondent's manager he had made applications for insurance for respondent to the Furman Company and for that purpose would call Mr. Brown and give him the information after which the policies were mailed to respondent. After he was released from the hospital subsequent to the crash he returned by train and talked to the insurance adjuster. Afterward he went to Virginia in an automobile with trailer to bring back the wrecked plane; the adjuster also went to Virginia to investigate. A list of the parts missing from the plane was compiled with description and costs. The adjuster told the witness, in effect, that the claim would be

paid. The remainder of the testimony of this witness is presently unimportant.

Respondent's concluding witness was it general manager, secretary and treasurer, Mr. J. R. Perry. He dealt exclusively in insurance matters with the Furman Company and the policies were issued by appellant and Associated Aviation Underwriters. He would call the Furman Company over the telephone when he wished to arrange insurance for respondent which was frequent because respondent at that time was buying and selling airplanes and when a new one was obtained the Furman Company was called for insurance. After a call and conversation with Mr. Brown, or some one in his office, a policy was issued thirty to forty days later and statement sent and check of respondent would be given in payment. In the conversation the necessary information would be given, such as model, serial number, motor type, seating capacity, registration number, etc. The witness said: "When we called Alester G. Furman Company for insurance, we had insurance * * * (the policies) were dated back to the time of the applications for insurance, when we called them for it;" further that the Furman Company purported to give respondent a binder in each case, but not in writing. The witness did not call for the insurance in controversy because he was out of town. He said that in other cases he called Mr. Brown and told him he wanted insurance and the latter would say, "O. K., you have got insurance". The witness knew nothing of Seibels, Bruce & Company or Mr. Michaelsen before this accident occurred. About ten days or two weeks after the crash the witness went by Farmville on a return trip from New York, and found that the crashed plane had not been brought into the airport and he went out to see it for the first time and had it brought into Farmville when he was there. He made a list of the missing parts and obtained their values from the manufacturer's catalog. Upon the return of the witness to Greenville he gave the insurance adjuster all of the information and at the adjuster's request the witness flew him to

Virginia for the purpose of an inspection of the damaged plane. He was assured by the adjuster that the claim would be promptly paid.

Much of the testimony which has been stated was admitted over objection for alleged incompetency but there are no exceptions relevant thereto and the case has been considered upon the evidence which the record indicates the trial court deemed admissible.

The deposition of Mr. A. W. Smith was offered by respondent. He was its president in 1945. He called Mr. Brown of Alester G. Furman Company and told him to cover with insurance the Stinson plane which was then at Paris Mountain Airport, Greenville, but could not recall if any amount was stated.

A stipulation of facts was placed in evidence which related only to the plane crash on July 28, 1945, and the circumstances which followed there, without reference to any facts pertinent to the question now at issue. Appellant offered no other evidence but moved on the record for directed verdict which was granted and thereafter reversed as to it on motion for new trial, as has been stated.

The exceptions are briefed by appellant as raising two questions but they are embraced within the query whether the evidence adduced was sufficient to create an issue for the jury upon the question of an oral contract of insurance which may be elaborated to inquire whether there was evidence of a "binder" whereon appellant may be held liable although no policy of insurance was issued or executed. Respondent presents a preliminary question which arises from its contention that the order of the lower court whereby new trial was granted is not appealable. The last stated will be first discussed.

New trial was ordered upon the ground and for the reason that the trial judge decided upon reflection and further argument that he had committed legal

error in directing verdict for appellant. Thus the order is appealable and subject to review by this court to ascertain whether error of law was committed by its rendition. The pertinent authorities are cited in *Sellars v. Collins*, 212 S. C. 26, 46 S. E. (2d) 176, 177, where it was said: "It is well settled in this State that an order granting or refusing a new trial when based solely on an error of law is subject to review by this Court, but when the order is based upon questions of fact, or upon questions of law and fact, it is not appealable". Whether or not the evidence presented in an action at law is sufficient to raise an issue for submission to the jury for factual determination is a question of law. This has been decided too many times to require citation of cases. See 32 S. E. Dig., Trial, 139(1), where it is said: "Whether there is any evidence upon which the jury could determine as to the truth of a matter in issue is a question of law for the court". Therefore, respondent's point which challenges the appealability of the order under review is overruled.

This brings us to the main question, *viz.,* whether there was sufficient evidence to warrant a finding by the jury of liability of respondent upon an oral contract of insurance, and it is axiomatic that in our consideration we should view the evidence most favorably to respondent. It has been rather fully stated. We turn to the applicable authorities. They are legion as will appear by reference to the extensive annotations in 15 A. L. R. 995, 69 A. L. R. 559 and 92 A. L. R. 232.

It is necessary for enforceability that the essentials of the contract be agreed upon but all need not be expressed. They may be implied from custom and usual forms and former course of dealing. It was well said in *Eames v. Home Insurance Co.*, 1876, 94 U. S. 621, 24 L. Ed. 298, indicating the liberal attitude of the courts in construing the rights of parties under such circumstances: "If no preliminary contract would be valid unless it specified

minutely the terms to be contained in the policy to be issued, no such contract could ever be made or would ever be of any use. The very reason for sustaining such contracts is, that the parties may have the benefit of them during that incipient period when the papers are being perfected and transmitted. It is sufficient if one party proposes to be insured, and the other party agrees to insure, and the subject, the period, the amount, and the rate of insurance is ascertained or understood, and the premium paid if demanded. It will be presumed that they contemplate such form of policy, containing such conditions and limitations as are usual in such cases, or have been used before between the parties. This is the sense and reason of the thing, and any contrary requirement should be expressly notified to the party to be affected by it".

Our case of *Fulmer v. London, Liverpool & Globe Fire Ins. Co. et al.,* 172 S. C. 525, 174 S. E. 466, which is strongly relied upon by appellant, is an example of unenforceability of oral insurance for lack of agreement by the parties upon the essentials of the contract. It is easily distinguishable from the facts in the instant case for there was no existing policy as here, no identity of insurer and no former relationship of insured and insurer. Manifestly, it is not controlling of this case.

On the other hand, the rule of enforceability of oral contracts of insurance has long been recognized in this court. It was said in the year 1892 in the opinion in *Stickley v. Mobile Ins. Co.* (E. W. Seibels & Co., General Agents), 37 S. C. 56, 16 S. E. 280, 284, 288: "We will be obliged to hold that an insurance company can make a contract of insurance by parol, for which it will be bound. It is too late in the day, in view of the manifold forms by which obligations of insurance on property are firmly made by parol, to question the power * * *". Over half a century has elapsed since that emphatic statement was made and meanwhile the rule has been followed. See the recent

case of *Gaskins v. Firemen's Ins. Co.,* 206 S. C. 213, 33 S. E. (2d) 498.

No error is found in the conclusion of the lower court that the case should have been submitted to the jury under proper instructions.

Affirmed.

BAKER, C.J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.