618 S.E.2d 302

Heyward O. KEITH, Plaintiff,

v.

RIVER CONSULTING, INC., A.J. Concrete Pumping, LLC, Edward Helman and Schwing America, Inc., Defendants.

and

A.J. Concrete Pumping, LLC, Appellant,

v.

Hightower Construction Company, Inc., Respondent.

No. 4001.

Court of Appeals of South Carolina.

Heard April 5, 2005.
Decided June 20, 2005.
Rehearing Denied Aug. 29, 2005.

502

Timothy Alan Domin, of Charleston, for Appellant.

Michael S. Fahnestock, of Charleston, for Respondent.

WILLIAMS, J.:

A.J. Concrete Pumping, LLC (A.J.Concrete), appeals the grant of summary judgment to Hightower Construction Company, Inc. (Hightower Construction), arguing the circuit court erred in finding the case presented no factual issue for determination by a jury. A.J. Concrete also contends the circuit court erred in its alternative conclusion that the indemnification clause at issue was void as against public policy. We reverse and remand.

## FACTS / PROCEDURAL HISTORY

Hightower Construction was hired to erect a building foundation in Georgetown, South Carolina. A portion of the construction project required the pouring of concrete into a large mold. To complete this task, Daniel Premo, the job superintendent and foreman, entered into an oral contract with A.J. Concrete on behalf of Hightower Construction for the lease of a concrete truck and boom pump operator to pump concrete into the foundation mold. Although this was the first time Hightower Construction contracted with A.J. Concrete, it previously leased a concrete pump truck from A.J. Concrete II, A.J. Concrete's sister company. Premo, while

employed elsewhere, contracted with A.J. Concrete under similar circumstances on as many as thirty prior occasions.

On December 17, 1998, A.J. Concrete's truck and boom operator, Eddy Helman, arrived at the site. According to Helman, he and Premo discussed the presence of overhead electrical power lines before the pour began. Helman believed the safest way to conduct the job was to situate the boom pump in the closest safe position to the power lines and proceed with the pour by gradually moving away from the lines. After Helman situated the boom pump accordingly and poured about a yard of concrete, Premo motioned angrily at him to move the boom into the position farthest from the lines. This required that Helman move the boom pump closer and closer to the power lines during the course of the pour. Helman stated at his deposition that, although troubled by the change, he did not vocally object because Premo had previously stated that he and his workers would "keep an eye on the lines." He also stated that he understood his duty to be to "perform the concrete pump job to the requirements of my customer."

Premo initially stood inside the mold and guided the nozzle of the concrete pump while Helman guided the supporting boom with a radio control device. Premo later left to see to other business, assigning his task to Heyward Keith, another employee of Hightower Construction. Shortly thereafter, Keith directed Helman to move the boom. The boom came in contact with the nearby power lines, resulting in Keith being seriously injured from an electrical shock.

After Keith received the requisite medical attention, Helman and other Hightower Construction employees completed the job. Helman then presented Premo with a "job ticket," which listed the work performed, the applicable rate, and the amount owed for the job. The back of the ticket contained various contractual terms including terms of payment, limitation of warranties, and the following clause:

INDEMNIFICATION AND RISK OF LOSS: Lessor and Lessee agree that the leased equipment and all persons operating such equipment, including Lessor's employees, will be under Lessee's exclusive jurisdiction, supervision, and control during the time such equipment and operators

are on Lessee's job site, the Lessee agrees to indemnify Lessor against all claims, actions, proceedings, costs, damages, and liabilities arising in any manner out of, connected with, or resulting from the operation or handling of the leased equipment on Lessee's job site, including without limitation, any injury, disability or death of workmen or other persons and any loss or damage to property, whether the liability, loss or damage is caused by or arises out of the negligence of Lessor's employees or otherwise.

Nothing on the front of the job ticket directs the reader to the back of the ticket. Premo signed the job ticket and later presented a copy to Hightower Construction's office staff. Hightower Construction paid the full amount A.J. Concrete charged for the job.

After successfully pursuing a workers' compensation claim against Hightower Construction, Keith commenced a civil lawsuit against several defendants, including A.J. Concrete, alleging that their negligence caused his injuries. A.J. Concrete filed a third-party complaint against Hightower Construction, asserting contractual indemnity as reflected by the terms listed on the back of the job ticket. Both parties to the third-party claim filed motions for summary judgment. Following a hearing on the motions, the circuit court granted Hightower Construction's motion, concluding that, as a matter of law, the indemnification clause was not part of the contract and, alternatively, was unenforceable because it was overly broad and violated public policy. This appeal followed.

## STANDARD OF REVIEW

"The purpose of summary judgment is to expedite the disposition of cases which do not require the services of a fact finder." *George v. Fabri,* 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). When reviewing the grant of a summary judgment motion, this court applies the same standard which governs the trial court under Rule 56(c), SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose,* 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002).

In determining whether a triable issue of fact exists, the evidence and all factual inferences drawn from it must be viewed in a light most favorable to the nonmoving party. *Sauner v. Pub. Serv. Auth.*, 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003). Even if there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *Baugus v. Wessinger*, 303 S.C. 412, 415, 401 S.E.2d 169, 171 (1991). Summary judgment is not appropriate when further inquiry into the facts of the case is desirable to clarify the application of law. *Tupper v. Dorchester County*, 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997).

## LAW / ANALYSIS

### I. The Indemnification Clause as Part of the Contract

The circuit court found, as a matter of law, that the indemnification clause was not part of the contract because 1) the undisputed facts fail to reflect a meeting of the minds between the parties and 2) the terms on the back of the job ticket are unenforceable due to lack of consideration. We address each finding in turn.

### Meeting of the Minds

The circuit court's approval of Hightower Construction's motion for summary judgment was based largely on its finding that A.J. Concrete presented no evidence that the presence of the indemnification clause was "made known or ... from all the circumstances, should [have been] known" by the parties to the contract. *Player v. Chandler*, 299 S.C. 101, 105, 382 S.E.2d 891, 894 (1989). We disagree and find that A.J. Concrete presented a question of fact for determination by a jury.

This case concerns an oral contract to provide concrete pumping services. Although the disputed term of the contract was presented on the back of a job ticket and signed by Hightower Construction *after* completion of the pour, A.J. Concrete argues that the lessee's supervisory control and accompanying lessor indemnification are so common in the trade that they were understood by the parties upon entry into the contractual relationship.

 The main concern of the court, when interpreting an oral contract, is to give effect to the intention of the parties. *Columbia East Assoc. v. Bi–Lo, Inc.*, 299 S.C. 515, 519, 386 S.E.2d 259, 261 (1989). "The courts, in attempting to ascertain this intention, will endeavor to determine the situation of the parties, as well as their purposes, at the time the contract was entered." *Id.* When a contract is silent as to a particular matter, parol evidence is admissible to reveal the parties' true intent. *Id.* To this end, "it is necessary for enforceability that the essentials of the contract be agreed upon *but all need not be expressed.* They may be implied from custom and usual forms [trade usage] and former course of dealing." *Carolina Aviation, Inc. v. Glens Falls Ins. Co.*, 214 S.C. 222, 230, 51 S.E.2d 757, 761 (1949) (emphasis added). While the use of uniform trade practices to reflect contractual intention has been statutorily codified in the U.C.C. and further refined as it applies to the sale of goods, a review of South Carolina case law reveals that the contractual efficacy of trade custom and usage is also applicable to other types of contracts. *See id.* at 230–31, 51 S.E.2d at 761; *Burden v. Woodside Cotton Mills,* 104 S.C. 435, 439, 89 S.E. 474, 475 (1916).

 "Trade usage" has been generally defined as "a uniform course of conduct in some particular business or calling" or "a practice or method observed with regularity with respect to the transaction being performed" that is "so well established, general, and uniform that [the parties] must be presumed to have acted with reference thereto." 21A Am. Jur.2d *Customs and Usages* § 1 (1998). "A usage or custom to be recognized by law must be long standing, general in its operation, known to, and acquiesced in, by all whose rights are affected by it, and be just and reasonable in its operation." *Love v. Gamble,* 316 S.C. 203, 209–10, 448 S.E.2d 876, 880 (Ct.App.1994). If evidence is presented to support a specific trade usage that may resolve an ambiguity or matter on which the contract is silent, "[w]hether the existence of a particular custom or usage has been satisfactorily shown by the evidence is ordinarily a question of fact, which . . . is to be determined, like other factual questions, by the jury." 21A Am.Jur.2d *Customs and Usages* § 53 (1998). "The jury determines under all the circumstances of the case the weight to be given to evidence of a custom or usage of business." *Id.; see also*

*Gold Kist, Inc. v. Citizens and S. Nat'l Bank of South Carolina,* 286 S.C. 272, 279, 333 S.E.2d 67, 71 (Ct.App.1985) (finding, under a different factual and procedural scenario, that "the question of whether [a disputed term] was a part of the agreement between the parties was a jury question."); *RentCo., a Div. of Fruehauf Corp. v. Tamway Corp.,* 283 S.C. 265, 268, 321 S.E.2d 199, 201 (Ct.App.1984) (finding an issue relating to the intent of the parties, when the contract was silent to a certain term, was one that should have been presented to the jury).

In the present case, A.J. Concrete presented the affidavit of Jim Duffy, the manager of A.J. Concrete, as evidence that indemnification, as reflected by the job ticket, was A.J. Concrete's "habit and custom, as well as the general standard in the industry." A.J. Concrete also offered the affidavit of Jeff Moll, the president of several concrete companies, a member of the American Concrete Pumping Association, and a past member of its board of directors, who stated that he was "familiar with the industry standards and customs in the construction industry" and indemnification was "typical in the industry." [1] Furthermore, it can certainly be inferred from the conduct of the parties' employees, when viewing the evidence in a light most favorable to A.J. Concrete, that all involved were at least cognizant of the customs regarding Hightower Construction's supervisory control of the boom pump truck and its operator, notwithstanding the fact that the job ticket containing the written terms had yet to be presented or signed.

Considering the above evidence, we conclude the circuit erred in granting Hightower Construction's motion for summary judgment. However slight it may appear in the eyes of the court, A.J. Concrete supported its position that the parties understood the conditions of indemnification at the time the contract was entered into with competent evidence; hence, a jury issue arose as to a material fact of the case and summary judgment was not proper.

---

1. Moll's deposition distinguishes this case from the facts of *Love,* 316 S.C. at 209–210, 448 S.E.2d at 880, in which the circuit court's grant of summary judgment was affirmed because no evidence of trade custom or usage was offered.

### Lack of Consideration

The circuit court also concluded that the disputed indemnification clause was not part of the contract due to the fact that the job ticket was signed after the performance of A.J. Concrete's contractual duties; thus, there was no consideration for its terms. In light of our previous discussion, this conclusion was also made in error. There is no doubt that adequate consideration existed to form a contract at the time the contract was entered. A.J. Concrete does not contend that indemnification was an additional term added to the contract after performance, but that the parties understood the indemnification term when the contract was entered into due to commonly accepted trade practices. Accordingly, the circuit court's finding that the term fails as a matter of law due to lack of consideration was erroneous.

## II. Public Policy

■ As an alternative basis for granting Hightower Construction's motion for summary judgment, the circuit court found that the disputed indemnification clause was overly broad and thus void as against public policy. We disagree.

The circuit court based its finding on this court's recent decision in *Fisher v. Stevens*, 355 S.C. 290, 584 S.E.2d 149 (Ct.App.2003). In *Fisher*, we held that an exculpatory clause, once determined overly broad, was void as against public policy. The exculpatory clause at issue in *Fisher* relieved "any persons in any restricted area" from all liability. *Id.* at 296, 584 S.E.2d at 152. Because the clause relieved all potential defendants from any and all liability, no matter the circumstances giving rise to the injury, we concluded the clause was overly broad as a matter of law. *Id.* at 297, 584 S.E.2d at 153 (citing a Wisconsin Supreme Court case interpreting a exculpatory clause which likewise barred an injured party from any legal recourse for damages arising from his injuries).

In the present case, the clause at issue merely calls for the indemnification of a potential defendant by another potential defendant for liability arising from a plaintiff's injuries. Furthermore, the contractual indemnification is limited to those injuries arising from the use and operation of the leased

equipment while it is under the lessee's "exclusive jurisdiction, supervision, and control." Recognizing the freedom of sophisticated parties to contract as they choose, we conclude the clause, though wide in scope, is not so overly broad as to render the clause void as against public policy.

## CONCLUSION

Because we conclude that A.J. Concrete presented a limited question of fact for determination by a jury and that the indemnification clause at issue is not void as against public policy, the decision of the circuit court is hereby

**REVERSED AND REMANDED.**

HEARN, C.J., and KITTREDGE, J., concur.