THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
 BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Wayne Razzi, Appellant,
 v.
 Gail A. Moore
 n/k/a Gail A. Abernathy, Respondent.
 
 
 

Appeal From Georgetown County
 B. Hicks Harwell, Jr., Circuit Court
 Judge
Unpublished Opinion No. 2007-UP-536
Submitted November 1, 2007  Filed
 November 20, 2007   
AFFIRMED

 
 
 
 Toni Lee Tack Pennington, of Pawleys Island, for Appellant.
 Robert J. Moran, of Murrells Inlet, for Respondent.
 
 
 

PER CURIAM:  Wayne Razzi (Razzi)
 appeals the trial courts grant of summary judgment in this contract action. 
 The trial court found Razzi failed to establish the existence of a valid,
 enforceable contract between himself and Gail A. Moore, n/k/a Gail A. Abernathy
 (Abernathy), at the time Abernathy accepted a competing offer to purchase her home. 
 We affirm.    
FACTS
Prior to July 28, 2005, Abernathy listed her home in Pawleys  Island, South Carolina for sale through Premier Realty, Inc. (Premier) for
 $205,000.  On July 28, 2005, The Dieter Co. (Dieter), on behalf of Razzi,
 contacted Premier by fax with an offer of $180,000 for Abernathys property.  Abernathy
 returned with a counteroffer of $198,000 by fax.  Razzi did not accept
 this counteroffer.  
On August 1, 2005, Razzi faxed Abernathy a new offer for $189,900. 
 Abernathy did not alter this price, but she did counter the offer with an
 additional stipulation that the home would be sold as is.  Abernathys
 agent at Premier hand-delivered this counteroffer to Razzis agent at Dieter on
 August 2, 2005.  
On August 3, 2005, Abernathy received an offer of $205,000 for her
 home from a third party.  Abernathys agent informed Razzis agent of this
 competing offer by August 4, 2005.  After learning of the competing offer, Razzis
 agent verbally indicated to Abernathys agent that Razzi accepted the
 counteroffer.  Razzis agent also sent a fax cover sheet to Abernathys agent
 stating Razzi had signed the counteroffer, but the signed counteroffer was not
 included as part of that fax.  Having no signed counteroffer from Razzi, Abernathy
 accepted the full price offer from the third party on August 4, 2005.  Abernathy
 did not receive the signed counteroffer from Razzi until August 5, 2005.
The trial court found Razzi failed to establish the existence of a
 valid, enforceable contract between the two parties, and therefore, the trial
 court granted summary judgment in favor of Abernathy.  This appeal follows.
 
STANDARD OF REVIEW
When
 reviewing the grant of a summary judgment motion, this [C]ourt applies the same
 standard which governs the trial court under Rule 56(c), SCRCP. . . .  Englert,
 Inc. v. LeafGuard USA, Inc., 365 S.C. 565, 569, 619 S.E.2d 12, 14 (Ct. App. 2005).  Rule 56(c), SCRCP, provides:
 
[Summary
 judgment] shall be rendered forthwith if the pleadings, depositions, answers to
 interrogatories, and admissions on file, together with the affidavits, if any,
 show that there is no genuine issue as to any material fact and that the moving
 party is entitled to a judgment as a matter of law.  
In determining whether any triable issue of fact exists, the
 evidence and all factual inferences drawn from it must be viewed in a light
 most favorable to the nonmoving party.  Donahue v. Multimedia, Inc.,
 362 S.C. 331, 337, 608 S.E.2d 162, 165 (Ct. App. 2005).  Even if there is no
 dispute as to evidentiary facts, but only as to the conclusions or inferences
 to be drawn from them, summary judgment should be denied.  Keith v. River
 Consulting, Inc., 365 S.C. 500, 505, 618 S.E.2d 302, 304 (Ct App. 2005). 
 Summary judgment is not appropriate when further inquiry into the facts of the
 case is desirable to clarify the application of law.  Id.  
LAW/ANALYSIS
Razzi argues
 the trial court erred in granting summary judgment because genuine issues of
 material facts exist.  Specifically, Razzi contends facts are in dispute as to
 whether Abernathy effectively notified Razzi of her withdrawal of the
 counteroffer before she accepted another offer.  Razzi claims he was never
 informed Abernathy had received another offer.  Razzi contends this dispute
 over notice is a factual issue that should be submitted to the jury.  We find
 this contention unfounded. 
It is well settled law that notice to an agent while acting
 within the scope of his authority is notice to the principal.  Hill v.
 Carolina Power & Light Co., 204 S.C. 83, 99, 28 S.E.2d 545, 550
 (1943).  For notice to bind the principal, it must relate to the business or
 transaction in reference to which the agent is authorized to act for and on
 behalf of his principal, and to matters over which his authority extends. Id.  A principal is affected with constructive
 knowledge of all material facts of which his agent receives notice while acting
 within the scope of his authority.  Bankers Trust of S.C. v. Bruce, 283
 S.C. 408, 423, 323 S.E.2d 523, 532 (Ct. App. 1984).  Furthermore, an agents notice binds the principal in
 real estate transactions as well.  See Faulkner v. Millar, 319
 S.C. 216, 221, 460 S.E.2d 378, 381 (1995) (Buyers notice to Sellers realtor
 and attorney is binding upon Sellers.).  
Steve Tadlock (Tadlock), a real estate agent with Dieter, worked
 with Razzi in the negotiating process for Abernathys property.  Tadlock stated
 in his affidavit: On August 4, 2005, [Abernathys agent], had called me saying
 that [Abernathy] had accepted a full price offer and that my buyers were out of
 luck.  Tadlock also demonstrated his knowledge of the competing offer in a fax
 cover sheet, dated August 4, 2005, to Abernathys agent.  This cover sheet
 included a message acknowledging Abernathys agent had informed Tadlock that
 another offer had been received and would be accepted.  In the current
 situation, Tadlock was acting as the agent for Razzi for the purchase of Abernathys
 property.  Therefore, any knowledge Tadlock had of a competing offer was
 imputed to Razzi by way of their agency relationship; it is irrelevant whether
 Razzi had actual knowledge of this competing offer.  Tadlocks knowledge of a
 competing offer was sufficient notice to Razzi that Abernathys counteroffer
 had been withdrawn.    
As a general rule, a mere offer to buy or sell, not supported by
 sufficient consideration, may be withdrawn by the party making it at any time
 before it is accepted by the other party . . . as long as sufficient notice of
 the withdrawal is communicated to the offeree prior to acceptance.  77 AM. JUR. 2D Vendor
 and Purchaser § 22 (2007); see Masonic Temple v.
 Ebert, 199 S.C. 5, 12, 18 S.E.2d 584, 587 (1942) (It is clear, in the
 ordinary case, that an offer may be withdrawn at any time before its
 acceptance, by notice given to that effect to the other party.).  It is clear
 that the law does not require a notice of withdrawal of an offer to be in any
 particular form.  It is not necessary that the words revoke or withdraw be
 used.  Masonic Temple, 199 S.C. at 16, 18 S.E.2d at 589.    Withdrawal
 of an offer is sufficient if the person making the offer does some act
 inconsistent with it . . . and that person to whom the offer was made has
 knowledge of such act.  Id.   
As of August 4, 2005, Razzi had not accepted Abernathys
 counteroffer, leaving Abernathy free to withdraw her counteroffer.  Although there
 was never a specific statement withdrawing Abernathys counteroffer, we find Abernathys
 act of informing Razzis agent that the full price offer had been received and
 would be accepted constitutes a sufficient withdrawal of her counteroffer. 
 This act put Razzis agent, as well as Razzi, on notice that Abernathys
 counteroffer was withdrawn.  Razzi failed to provide Abernathy with written
 confirmation of his acceptance of the counteroffer until August 5, 2005, by
 which time Abernathy had withdrawn her counteroffer.  With only an oral
 acceptance of the contract, Razzi was in violation of the Statute of Frauds,
 leaving the parties with no valid, enforceable contract.  See Bradshaw
 v. Ewing, 297 S.C. 242, 245, 376 S.E.2d 264, 266  (1989) (The Statute of
 Frauds . . . requires, in pertinent part, that a contract for the sale of land
 must be in writing.).  
Razzi disputes whether the counteroffer was accepted by August 4,
 2005, but we find no factual dispute as to this issue.  The Statute of Frauds
 requires a contract for the sale of land to be in writing.  S.C. Code Ann. §
 32-3-10 (1976) (No action shall be brought . . . [t]o charge any person upon
 any contract or sale of lands . . . [u]nless the agreement upon which such
 action shall be brought or some memorandum or note thereof shall be in writing.
 . . .).  A formally executed contract is not required for satisfaction of the
 Statute of Frauds, but there must, at a minimum, be some memorandum or note of
 the agreement which sufficiently indicates a contract has been entered between
 the parties.  Honorage Nursing Home of Florence, S.C., Inc. v. Florence Convalescent Ctr., Inc., 367 S.C. 108, 114-15, 623 S.E.2d 853, 856 (Ct. App.
 2005).  
On August 4, 2005, Razzis agent verbally indicated to Abernathys
 agent that Razzi accepted the counteroffer, but Razzi did not give a written
 confirmation of this acceptance at that time.  Razzi argues that the fax cover
 sheet sent on August 4, 2005, satisfies the writing requirement, but we do not
 agree.  The fax cover sheet indicated Razzi signed the counteroffer, but Razzi failed
 to actually provide that signed counteroffer.  Without a more substantial
 writing, we do not find the fax cover sheet to be a sufficient writing indicating
 an agreement has been entered between the parties, and, therefore, the Statute
 of Frauds has not been satisfied.    
Razzi next argues the facts of this case allow for the application
 of the part performance exception to the writing requirement, thus removing the
 contract from the Statute of Frauds.  However, we do not find any factual
 dispute which would make this exception applicable.  To remove an oral
 contract to convey real estate from the Statute of Frauds, [the party trying to
 enforce the contract] must show part performance of the oral contract.  Bradshaw,
 297 S.C. at 245, 376 S.E.2d at 266.  While payment of the purchase price for
 the property is evidence of performance, [p]ayment of the purchase price is
 the weakest evidence of part performance and will not suffice on its own to
 remove a contract from the Statute of Frauds.  Id.  A court will only
 grant specific performance of an oral contract for the conveyance of real
 estate when the payment of the purchase price is coupled with possession of or
 improvements to the land by the purchaser.  Stackhouse v. Cook, 271 S.C.
 518, 522, 248 S.E.2d 482, 484 (1978).     
While Razzi did pay earnest money for Abernathys property, we do
 not find this evidence strong enough to remove the contract from the Statute of
 Frauds.  Razzi neither took possession of the land nor made improvements to it,
 and without those acts, the small amount of earnest money Razzi paid will not
 suffice to remove the contract from the Statute of Frauds.           
CONCLUSION
For the reasons set forth above, we find no genuine issue of
 material fact exists, and the trial court was correct in finding Abernathy was
 entitled to summary judgment as a matter of law.  Accordingly,
 the trial courts decision is
AFFIRMED.[1]
ANDERSON, SHORT,
 and WILLIAMS, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.