18142

E. E. DARGAN, Respondent, v. METROPOLITAN
PROPERTIES, INC., Appellant
(133 S. E. (2d) 821)

*Messrs. Long & Long,* of Conway, *for Appellant,* ▮

*Ralph Hoffman, Esq.,* of Conway, *for Respondent,* ▮

December 16, 1963.

BUSSEY, Justice.

This action is for the foreclosure of a real estate mortgage wherein the special master to whom the case was referred recommended, and the circuit court decreed, foreclosure and sale of the mortgaged premises. The defendant mortgagor now appeals.

The facts from the record are as follows: On June 1, 1960, respondent sold to the appellant real estate located

in Georgetown County containing in the aggregate 2,332 acres of land, the purchase price not being disclosed by the record. The appellant gave a note and purchase money mortgage securing the same to respondent in the sum of one hundred sixty thousand dollars, which mortgage was subordinated to one given by appellant to Metropolitan Life Insurance Company in the amount of seventy-five thousand dollars. The mortgage to respondent recited that the terms and conditions of a timber management agreement between the parties was incorporated into the mortgage as a part and parcel thereof, and the note which the mortgage was given to secure recited that it was subject to the terms of the mortgage and also to the terms of a timber management and cutting agreement between the parties. This timber contract was not offered in evidence.

Both the note and mortgage provided for payments on the principal at the rate of eight thousand dollars per annum, and for the payment of interest at the rate of six per cent per annum, payments of both principal and interest payable annually on anniversary dates. The mortgagor reserved the right to anticipate the payment of any part or all of the unpaid balance at any time, without penalty. The note contained the following provision:

"If any installment of interest is not paid at its maturity the same shall thereafter bear interest at the rate of Six (6%) per cent, per annum, until paid, and failure to pay any interest, or any installment of principal, or any portion thereof, for the space of sixty (60) days after the same become due and payable, or if default be made in the performance of, or compliance with, any of the covenants and conditions of the mortgage securing this note, then in any of said events, said principal sum with all accrued interest thereon, shall become at once due and payable at the option of the holder hereof, and be collectible without further notice."

The mortgage reflects that, upon the real estate, there were located a main dwelling, two superintendents quarters, six tenant houses and four tobacco barns.

As of June 1, 1962, the principal balance due on the note and mortgage was the sum of $132,302.49. Exactly how payments of principal and interest prior thereto were made does not clearly appear from the record, but it does appear that at least some previous payments had been made by corporate or personal checks received and accepted by the mortgagee.

One Keith T. Jones is president and majority stockholder of the appellant corporation, he having signed the note and mortgage in his capacity as president. It appears that one M. H. Smith, a public accountant in Myrtle Beach, South Carolina, handled certain affairs for the corporation, but the extent of his authority which, incidentally, is not questioned, does not clearly appear. On May 30, 1962, respondent wrote to Mr. Smith advising him that interest due on June 1st had been computed in the amount of $8,-396.05, and requested Mr. Smith to advise if the computation did not agree with his figures. Just what happened between that date and the 5th of July does not appear, but, on that date, Mrs. Ray, secretary for the respondent, wrote Mr. Smith and enclosed a sheet showing the computation of interest due since June 1st. She also, at the direction of respondent, advised him of a charge of $1.38 per day interest on interest from June 1st until paid. The statement enclosed at that time showed the amount of interest to be $8,372.49, rather than the figure first above given. It was then explained that the error was the result of the respondent or his agent having made a miscalculation of one day in figuring the interest.

On or about July 20, 1962, Mr. Jones, President of the appellant corporation, was seriously injured in an automobile accident and was confined to Ocean View Memorial Hospital from that date until the early part of August. On July 31, while Mr. Jones was still not having visitors, Mr. Smith went to the hospital about 6 o'clock, and was authorized by Mr. Jones to pay the interest due since June 1st. He thereafter returned to his office, signed a check

dated July 30, 1962, in the amount of $8,372.49, payable to respondent, designated "for interest on mortgage Metropolitan Properties, Inc.", and signed "Nightingale Plantation, M. H. Smith." Nightingale Plantation was apparently the name by which the mortgaged property was known. The check was for the correct amount of interest due June 1st, but did not include any sum for interest on unpaid interest. According to Mr. Smith, he deposited this check properly addressed in the United States mail about 7:30 P. M. on the evening of July 31st, but does not say whether he put it in the Post Office or in a street box. The envelope was postmarked "Myrtle Beach, August 1, 11 A. M." and the undisputed evidence is that it was received by the respondent at his office in Conway, South Carolina, on the afternoon of August 2nd, the office of the respondent being designated in the note as the place of payment.

On the early morning of August 2nd, the sixty-day grace period having expired and the appellant being in default, the respondent exercised his option to declare the entire balance due and payable and placed the note and mortgage in the hands of his attorney for collection. On August 3rd, respondent's counsel advised Mr. Smith by letter of the action of his client and returned to Mr. Smith the aforementioned check received by his client the previous afternoon.

Thereafter, this action was commenced on August 7th, and on the same date respondent's counsel wrote Mr. Smith a letter setting forth the amounts necessary to pay principal, interest and attorney's fees and advised him that if payment were promptly made, he would be glad to discuss with him a lesser attorney's fee than that provided for in the note.

The facts of the case are not in dispute, no witnesses having been offered by either party and the cause having been submitted to the special master upon documentary evidence and a stipulation of facts by counsel for the respective parties.

From the foregoing it clearly appears that on the morning of August 2nd, when respondent placed his note and mortgage in the hands of an attorney for collection or foreclosure, the appellant was in default and the respondent had the legal right, without further notice or demand, to declare the entire balance due and commence this foreclosure action. This right could not thereafter be taken away or nullified by a partial tender. *Shirley v. Parris,* 121 S. C. 260, 113 S. E. 788; *Berry v. Caldwell,* 121 S. C. 418, 114 S. E. 405; *Farmers' Bank & Trust Co. v. Fudge,* 113 S. C. 25, 100 S. E. 628.

The appellant does not challenge the correctness of the respondent's legal and contractual position as above set forth. The crux of appellant's contention is simply that, under the facts and circumstances here, foreclosure would impose an unconscionable hardship upon the mortgagor and give the mortgagee an unconscionable advantage, and that a foreclosure action being one in equity, the court, in equity, should relieve the appellant from default.

In its answer, while appellant alleged that it would be inequitable to allow the mortgage to be foreclosed, no set of facts was alleged which would entitle appellant to any equitable relief from its default, under any authority cited or known to us.

The facts relied upon by appellant as entitling it to equitable relief may be briefly summarized as follows: Mr. Jones was in the hospital as the result of an accident from July 20th until after the grace period expired; there had been paid on the principal of the note and mortgage some eleven thousand dollars in excess of the annual payments required; and the interest payment was only a little short and a little late after the expiration of the grace period.

Much of appellant's argument in its brief is addressed to alleged facts which do not appear in the transcript of record, in violation of Section 7 of Rule 8 of this court. For instance, it is argued by appellant, but not borne out by the

record, that the principal payments were made out of the proceeds of timber cut from the mortgaged land. If that be true, it would seem to follow that the respondent's security had been to that extent depleted.

One of the principal facts argued by the appellant as entitling it to equitable relief is the hospitalization of Mr. Jones. It should, however, be pointed out that fifty days of the grace period had expired before Mr. Jones suffered his unfortunate accident, during which period of time the interest, although due, was not paid. Mr. Smith apparently handled all the affairs of the corporation and apparently had full authority to do so, except he needed or wanted express authorization from Mr. Jones to sign the particular check. Under all the circumstances, it is far from clear that the accident of Mr. Jones had any causative effect with respect to the default.

Appellant cites no decision from this or any other court which would entitle it to equitable relief on the facts disclosed by the record. The only authority cited by the appellant at all is 59 C. J. S. Mortgages, § 495 (6), p. 794.

The cited section deals with various factual situations, in which equitable principles have been invoked to relieve a mortgagor from acceleration of maturity of the debt. We have reviewed a number of decisions cited in the footnotes to said section and, suffice it to say, we found no case in which any court had accorded equitable relief to a mortgagor on facts at all similar to the facts disclosed by the record here.

From a review of the decisions, referred to, it would appear that if the appellant considered itself entitled to equitable relief from its default, it should have properly alleged and proved such facts as would entitle it to consideration. The timber contract between the parties was not offered in evidence; no evidence was offered as to any down payment made by the appellant on the purchase price of the property; no evidence as to the status of the first mort-

gage to Metropolitan Life Insurance Company with respect to whether it was current or in arrears and about to be foreclosed; no evidence as to the value or condition of the property at the time of the foreclosure proceeding; no evidence that respondent has been guilty of any unconscionable conduct; and no evidence as to the extent of income or benefits derived by the mortgagor from the premises while in possession, all of which would be very pertinent matters for the consideration of this court in determining whether, in fact, any unconscionable or inequitable hardship is being worked upon the appellant by the acceleration of the debt and the foreclosure of the mortgage.

Since the burden was upon the appellant to give the court the benefit of all facts pertinent to whether or not appellant was entitled to any equitable relief, we simply hold that the appellant has failed to prove a case which would entitle it to any relief under equitable principles. For all this court knows from the record, the denial of the foreclosure might very well work an inequitable hardship upon the respondent and give the appellant an unconscionable advantage, rather than the reverse thereof.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.