0059

CAROLINA COMMERCIAL BANK, Respondent, v. ALLENDALE FURNITURE COMPANY, INC., Bankers Trust of South Carolina, and WSCS, Inc., Defendants, of whom Allendale Furniture Company, Inc., is Appellant.

(312 S. E. (2d) 569)

Court of Appeals

*Steven M. Anastasion,* of *Callison, Tighe & Rush,* Columbia, *for appellant.*

*Thomas O. Lawton, Jr.,* Allendale, *for respondent.*

February 6, 1984.

CURETON, Justice:

This is an action for foreclosure of a mortgage on real property brought by Carolina Commercial Bank, the mortgagee, against Allendale Furniture, Inc., the mortgagor, and two other defendants, a junior mortgagee and a judgment creditor. The case was tried before a Master who recommended foreclosure. The circuit court concurred and ordered the mortgage foreclosed.

The principal issues on appeal are (1) whether a mortgagee can invoke an acceleration clause without notifying the mortgagor of its intent to change a long-standing practice of accepting late payments, and (2) whether the mortgagee herein exercised its option to accelerate the note prior to receiving a late payment from the mortgagor. We hold that while the mortgagee was not estopped from invoking the acceleration clause of its note, its failure to do so prior to receipt of the one payment that cured the default prohibited its acceleration of the note. We therefore reverse.

On April 26, 1974, Allendale Furniture executed its note and mortgage in favor of Carolina Commercial Bank in the principal amount of $75,000.00, payable in one hundred twenty equal consecutive, monthly installments of $919.99, the first payment being due on June 1, 1974. The mortgage encumbers

certain real property in Allendale County as well as other property in Barnwell County.

The monthly payments under the note and mortgage were made on or near the first of the month from 1974 through September, 1976. From September, 1976 until February, 1980 however, payments on the mortgage were sporadic, some being made in the month in which they were due, but later than the payment date and sometimes running from as little as eight (8) days to several months late.

Despite the timing of these payments, the Bank never refused a late payment until February 22, 1980. It also never demanded payment of any delinquency charges prior to the institution of this action.

The monthly payment for February, 1980 was received from Allendale Furniture by the Bank on February 22, 1980. The latter returned the payment to Allendale Furniture with a letter informing it that the Bank's attorney would be "in touch." According to the Bank it placed the note and mortgage in the hands of its attorney with instructions to foreclose on February 14, 1980. On March 10, 1980, Allendale Furniture was served with the summons and complaint in this action. Between February 1, and March 10, no notice was given to Allendale Furniture of the Bank's intention to accelerate the maturity of the indebtedness.

By letter dated March 10, 1980, Allendale Furniture again tendered the February payment along with the March payment, but these were returned to it by the Bank on March 31, 1980.

The initial question for consideration is whether the Bank is estopped from exercising its option to accelerate by virtue of its established practice of accepting late payments. The loan note provided, *inter alia:*

> (a) If default be made in the performance of or compliance with any of the covenants and conditions of this note or of the mortgage or any other instrument securing this note, then in any of said events, said principal sum with all accrued interest thereon shall become at once due and payable at the option of the holder hereof *without further notice.* [Emphasis added].
>
> (b) *Failure to exercise this option* [default in payment or a breach of any covenant or condition] *shall not con-*

*stitute a waiver of the right to exercise the option in the event of any subsequent default.* [Emphasis added].

The master found that from sometime in 1978 through December 1979 the bank records indicated some 26 telephone calls and eleven (11) letters to Allendale Furniture regarding the status of the loan. Allendale's president admitted to receiving some of these letters and telephone calls. It is apparent that Allendale Furniture was on notice that the Bank was less than satisfied with the manner in which payments were being made.

We find the doctrine of equitable estoppel to be inapplicable to the facts of this case. The essence of equitable estoppel is that the party entitled to invoke the principle was misled to his injury. The essential elements are: "(1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change [one's] position prejudicially." *South Carolina State Highway Department v. Metts*, 270 S. C. 73, 240 S. E. (2d) 816 (1978).

There is a lack of evidence that Allendale relied on the representations, acts or silence of the Bank or was misled in any way to change its position by reason of such. We therefore find that the Bank has neither waived, nor is it estopped from exercising its right to foreclose.

Aside from the question of waiver and estoppel, there still remains the question of whether the Bank in fact exercised its option to accelerate the balance due prior to the receipt of the February payment.

Generally, a tender of arrears due on a mortgage note containing an acceleration clause will prevent foreclosure if made before the mortgagee has exercised its option to declare the entire amount of the debt due. *Florance v. Friedlander*, 209 Va. 520, 165 S. E. (2d) 388 (1969); *Hiller v. Prosper Tex, Inc.*, 437 S. W. (2d) 412 (Tex. Civ. 1969); *River Holding Co. v. Nickel*, 62 So. (2d) 702 (Fla. 1952); *Lee v. O'Quinn*, 184 Ga. 44, 190 S. E. 564 (1937); *Clark v. Paddock*, 24 Idaho 142, 132 P. 795 (1913); *Lee v. Security Bank and Trust Co.*, 124 Tenn. 582, 139 S. W. 690 (1911); *Gunby v. Ingram*, 57 Wash. 97, 106 P. 495 (1910); 59 C.J.S. *Mortgages* Section 495(6)(b); 55 Am. Jur. (2d) *Mortgages* Section 389; 11 Am. Jur.

(2d) *Bills and Notes* Section 296; Annot., 41 A.L.R. 732. The basis of this rule is that after a tender, there is no longer any default which is the prerequisite of the right to exercise the option.

It is well settled that a provision in a note accelerating the maturity on nonpayment of installments at the option of the holder, requires some affirmative, unequivocal act on the part of the holder, calculated to effectively apprise the maker of his election to take advantage of the accelerating provision, and until such action has been taken the provision has no operation. In other words, some positive action on the part of the holder is an essential condition of the exercise of the option, and an intention to declare the full amount due is not sufficient. *Florance v. Friedlander, supra; Hiller v. Prosper Tex, supra;* 59 C.J.S. *Mortgages* Section 495(5)(b); 55 Am. Jur. (2d) *Mortgages* Section 386; 11 Am. Jur. (2d) *Bills and Notes* Section 296; Annot., 5 A.L.R. (2d) 968.

Relying on *Dargan v. Metropolitan Properties, Inc.,* 243 S. C. 324, 133 S. E. (2d) 821 (1963), the Bank contends the law of South Carolina provides that Allendale Furniture's tender of the arrears due after the Bank had placed the note and mortgage with its attorney for foreclosure could not prevent foreclosure. The Bank argues that turning the file over to its attorney constituted the affirmative act necessary to evidence its exercise of the option to accelerate the loan. We find *Dargan* factually distinguishable.

In *Dargan,* the mortgagor tendered only a part of the amount in arrears after the mortgagee placed the note and mortgage in the hands of its attorney for foreclosure. The Court held that the *partial* tender[1] did not cure the default. Thus, the mortgagee had the legal right, without further notice or demand, to declare the entire balance due and commence the foreclosure action.

Allendale Furniture, in contrast, tendered funds sufficient to completely cure its default on February 22nd. Implicit in the *Dargan* holding is the conclusion that had the mortgagor tendered the entire arrearages, as here, the mortgagee's right to foreclosure would have been nullified.

---

[1] The *partial tender,* as we read the opinion, was the failure of mortgagor to include interest on the accrued interest in its check to the Bank.

It is undisputed that the only affirmative act taken by the Bank to accelerate the balance due on its note prior to receipt of Allendale's February payment was to turn the file over to its attorney to commence foreclosure.[2] In *Dargan,* the mortgagee placed its note into its attorney's hands prior to receipt of the partial tender. Yet, the court implicitly found that a full tender of all arrears to the mortgagee prior to any action being taken by the mortgagee's attorney to accelerate would have nullified the mortgagee's right to foreclosure.

■ Since the attorney was the agent of the Bank and not the mortgagor, the Bank's action in placing its note with him was not sufficient to constitute an effective exercise of the option. See *Stalder v. Riverside Groves & Water Co.,* 167 Cal. 560, 140 P. 252 (1913). Cf. *Dargan v. Metropolitan Properties, Inc. supra; Cf. American Jet Leasing v. flight America, Inc.,* 537 F. Supp. 745 (W.D. Va. 1982).

■ Neither does the provision in the note accelerating the balance due upon default "without further notice" eliminate the requirement that the Bank affirmatively act to exercise its option prior to Allendale Furniture's tender of the amount in arrears. The lower court erred in finding that this provision justified the Bank's return of the check tendered and its commencement of these proceedings.

The distinction between an option to accelerate without notice and an election to accelerate is set out in *Hiller v. Prosper Tex. Inc.,* 437 S.W. (2d) 412, 415 (Tex. Civ. 1969):

Although the note specifically provides for optional acceleration without notice, the maturity date of such a note is not in fact accelerated until the holder does so treat it. The optional clause is not self-executing but requires some action on the part of the holder since the provision is for his benefit and he may or may not take advantage of it.

---

[2] The letter from the Bank to Allendale dated February 22, 1980 does not indicate that the Bank had accelerated the balance due on its note. It simply states, *inter alia;* "Since our numerous telephone conversations and our correspondence regarding your past account have been to no avail, I have contacted our attorney, Mr. Thomas O. Lawton, Jr. and he will be contacting you regarding this account."

We have been unable to uncover any case that has held that the turning over of a note by a mortgagee to its attorney was a sufficient exercise of its option to accelerate. We therefore hold that the Bank did not effectively exercise its option to accelerate the balance due on the note prior to the receipt of the February payment. Thus, the default was cured upon receipt of the payment on February 22nd.

Having concluded that the Bank was not entitled to foreclose its mortgage, we need not consider the third question raised by the appellant dealing with attorney fees.

Accordingly, we conclude the lower court was in error in permitting respondent to foreclose its mortgage, and hereby reverse the judgment of foreclosure.

Reversed.

GOOLSBY, J., concurs.

SHAW, J., dissents.

SHAW, Justice (dissenting):

This is an action to foreclose a real estate mortgage. The mortgage was given as security for a loan of $75,000 made by Respondent Bank to Appellant Allendale in April of 1974. The loan was evidenced by a note and secured by a mortgage on real property located in Allendale and Barnwell counties. I would affirm.

The Master and Circuit Judge reached the same conclusion. In an equity case, tried first by a Master and concurred in by the judge, the findings of fact are conclusive upon appellate courts and will not be disturbed on appeal unless it is shown that such findings are without any evidence to support them or against the clear preponderance of the evidence. *Carsten v. Wilson*, 241 S. C. 516, 129 S. E. (2d) 431 (1963); *Townes Associates v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976). I have considered Allendale's exceptions and thoroughly reviewed the record. There is ample evidence to support the factual conclusions of the Master and the Circuit Judge.

The Master of Equity and the Circuit Judge agreed that the bank was entitled to foreclose, that the bank was not estopped from declaring a default and that the bank was entitled to attorney's fees of $6,431.37. The Circuit Judge did disallow the

late charges assessed against Allendale. The bank is not appealing that issue.

The note provided that:

(a) "IF DEFAULT BE MADE IN THE PERFORMANCE OF OR COMPLIANCE WITH ANY OF THE COVENANTS AND CONDITIONS OF THIS NOTE OR OF THE MORTGAGE OR ANY OTHER INSTRUMENT SECURING THIS NOTE, THEN IN ANY OF SAID EVENTS, SAID PRINCIPAL SUM WITH ALL ACCRUED INTEREST THEREON SHALL BECOME AT ONCE DUE AND PAYABLE AT THE OPTION OF THE HOLDER HEREOF *WITHOUT FURTHER NOTICE.*" [Emphasis added]

(b) *"Failure to exercise this option* [default in payment or a breach of any covenant or condition] *shall not constitute a waiver of the right to exercise the option in the event of any subsequent default."* [Emphasis added]

(c) All costs of collection if the same be placed in the hands of an attorney for collection including a reasonable attorney's fee.

(d) *"Presentment, Protest and Notice are hereby waived."* [Emphasis added]

8. The note is a contract between the parties who contracted that:

(a) The holder could declare the debt in default *without further notice* [Emphasis added] if any condition were broken.

(b) The right to accelerate the entire debt was not waived if the holder had not previously called a default by breach of any condition of the note.

(c) "Presentment, Protest and Notice are waived."

For the first two and one-half years of the loan, Allendale made its monthly payments on time. Beginning in September of 1976, Allendale began making its payments anywhere from nine days to four months after the due date. This practice continued until February of 1980. During this period, the bank never refused any late payments nor assessed any late charges. However, the bank did send 37 notices (by letter and

by telephone) durng this period that Allendale needed to make timely payments thus adding costs.

On February 14, 1980, when the February payment had not been made, the bank contacted its attorneys and requested that foreclosure proceedings be instituted. The bank returned Allendale's February payment that was made on February 22. It was at this time that the bank informed Allendale that the matter had been turned over to its attorneys. Allendale later tendered the February and March payments but they were refused. Allendale had been warned on numerous occasions that it needed to make its payments on time. These numerous warnings clearly showed that Carolina considered timely mortgage payments to be of the essence. For time to be of the essence, it need not be stated in exact language in the contract. It may be inferred from the language of the contract and the conduct of the parties. *Hutto v. Wiggins*, 175 S. C. 202, 178 S. E. 869 (1935).

It is Allendale's position that tender of the February payment cured any default and precluded the exercise of the option to accelerate. The first payment under the note was due June 1, 1974, and the remainder of the payments due in equal consecutive monthly installments. On February 14, 1980, when the February payment had not been received, the bank had the right to exercise its option to accelerate payments without further notice.

Allendale claims that the bank is estopped from exercising its option to accelerate by its continued acceptance of late payments and its failure to notify Allendale of its intent to change that practice. In *Murphy v. Hagan*, 275 S. C. 334, 271 S. E. (2d) 311 (1980), our Supreme Court held:

> The elements of an equitable esoppel as related to the party claiming the estoppel are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) the action based thereon was of such a character as to change prejudicially the position of the party claiming the estoppel. 271 S. E. (2d) at 313.

Allendale also knew that the bank had the right to accelerate payments in the event of default without further notice. Thus,

Allendale had knowledge as to the truth of the facts in question and is prevented from relying on the bank's past control.

When the bank turned the matter over to its attorneys for foreclosure proceedings on February 14, 1980, Allendale was in default and the bank had the legal right, without further notice or demand, to declare the entire balance due and commence the foreclosure action. This right to foreclose could not then be taken away or nullified by a partial tender. *Dargan v. Metropolitan Properties,* 243 S. C. 324, 133 S. E. (2d) 821 (1963). Since the entire remaining balance and accrued interest became due upon default, the tender of the February and March payments was a partial tender insufficient to nullify the foreclosure proceedings. Also, upon a default, a payment of a debt is not considered made until it is accepted by the creditors with the intention of extinguishing the debt. *Ford Motor Credit Co. v. Morales,* 308 S. E. (2d) 102 (1983). The bank returned the February and March payments.

Finally, Allendale contests the reasonableness of the amount of attorney's fees awarded. The minimum amount allowed under the contract was 10% of the amount involved upon default. The lower court awarded 15%. The amount of attorney's fees may be reduced below the amount which the mortgagor contracted to pay if such amount would be excessive, unreasonable or unconscionable. *Little v. Sims,* 122 S. C. 382, 115 S. E. 639 (1923). In light of the facts and circumstances of this case, the amount of attorney's fees awarded was reasonable and proper. There has been no abuse of discretion.

This holding would promote commercial stability rather than mortgagor delinquency.

Accordingly, I would affirm.